### BECK v. MAX BONWIT & CO., Inc.

(Supreme Court, Appellate Term, First Department. June 10, 1915.)

1. MASTER AND SERVANT ⬤⟹6—EVIDENCE OF EMPLOYMENT.

    In an action for wrongful discharge, where it was denied that the president of defendant corporation signed the written contract of employment when plaintiff signed, conversations of the president with the plaintiff, at the time of the alleged making of the contract, that the plaintiff should pay certain "binder money" before the president would sign the contract, were improperly excluded from evidence on the ground that all matters had been embodied in a written contract, since, in determining the probability of the conflicting evidence as to whether the president signed, the surrounding circumstances and conversations forming the res gestæ were material.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 6; Dec. Dig. ⬤⟹6.]

2. MASTER AND SERVANT ⬤⟹6—EVIDENCE OF EMPLOYMENT.

    In an action against defendant corporation for wrongful discharge, where the issue litigated was whether the defendant's president signed the written contract of employment when the plaintiff did, evidence that such president and his attorney stated that he would not sign the contract until the officers of the corporation had been elected, in view of proposed

testimony that at such time such president and other officers had not been actually elected, was improperly excluded from evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 6; Dec. Dig. ☞6.]

3. TRIAL ☞251—INSTRUCTIONS—CONFORMITY TO ISSUES.

In an action for wrongful discharge, where the parties did not litigate the question whether plaintiff's employment, after he had signed, but defendant, as it contended, had not signed, a written contract, constituted an acceptance by defendant of the incomplete written engagement, but the only issue was whether defendant's president had signed the contract when plaintiff did, the giving of the charge that where a proposition is made in writing, and is accepted and acted upon by the other party verbally or by acts, a contract as binding as if it were in writing results, though abstractly correct, was erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☞251.]

4. MASTER AND SERVANT ☞42—WRONGFUL DISCHARGE—MEASURE OF DAMAGES.

Where plaintiff was hired at a salary of $75 a week, and was wrongfully discharged before the expiration of the period of hiring, and thereafter secured a position paying him $100 a week, in his action for the wrongful discharge his measure of damages was the amount of his wages for the entire period covered by the contract, less the wages received under the new employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 54–56; Dec. Dig. ☞42.]

Appeal from City Court of New York, Trial Term.

Action by Louis Beck against Max Bonwit & Co., Incorporated. From judgment for plaintiff, and from an order denying its motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued May term, 1915, before GUY, LEHMAN, and WHITAKER, JJ.

Leo Oppenheimer, of New York City, for appellant.
I. Gainsburg, of New York City, for respondent.

LEHMAN, J. [1, 2] The plaintiff sues upon a written contract which he claims was made on November 15, 1913. It is not disputed that on that date the plaintiff met Max Bonwit, who was at the time the actual or prospective president of the defendant corporation, and that the plaintiff then signed an agreement to enter into the employ of the corporation at a salary of $75 per week for one year. It is also not disputed that after the corporation began to do business the plaintiff did enter its employ and was paid the sum of $75 per week until discharged on February 13th. The sole issue litigated at the trial was whether, at the time that the plaintiff signed the contract, the defendant also signed it, by Max Bonwit, its president. Max Bonwit's attorney absolutely denied that he did sign it at that time. In determining the probability of the conflicting stories, the surrounding circumstances and conversations constituting part of the res gestæ were certainly material. The defendant therefore attempted to show that at the meeting on November 15th he had conversations with the plaintiff that before the corporation would enter into a binding contract the plaintiff was

to pay certain "binder money." This was, however, excluded, apparently on the ground that the conversation had been embodied in the written contract. Obviously, this ruling would have been correct if the defendant had been seeking to vary the terms of an established writing; but it bore directly upon the issue of whether the defendant had entered into any writing which did embody previous conversations. In the same manner the defendant was precluded from showing that Max Bonwit and his attorney stated that he would not sign the contract until the officers of the corporation had been elected, yet this testimony coupled with proposed testimony that at that time no officers had been elected, was clearly material.

[3] If these errors were the only errors in the record, it might be possible to argue that they were not necessarily material; but the trial justice also erroneously charged at the very end of his charge:

"Where the proposition is made in writing by one party, and is accepted and acted upon by the other party, either verbally or by action under it, it is as binding a contract as if it were in writing."

Unquestionably as an abstract proposition of law this statement is correct, and even though the complaint as amplified by the bill of particulars sets forth a written contract I should not consider that this charge was necessarily erroneous, provided the parties had actually litigated as an issue the question of whether the plaintiff's subsequent employment constituted an acceptance of an incomplete contract. No such issue was, however, even suggested at the trial, and the defendant was never called upon to show, and even in one instance precluded from showing, that this employment was at its inception a personal employment by Max Bonwit.

[4] In addition, the judgment is based upon a wrong measure of damages. The plaintiff performed no work from February 15th to April 27th, so that during that time he lost $875 in wages. Thereafter, however, he secured a position at $100 per week, and still had that position on October 8th, the date of the trial. During that period he therefore earned $25 a week more than he would have earned if he had remained in the defendant's employ. The damages to which he was entitled are the loss of wages for the whole period covered by the contract, and against the loss of wages for the first part of this period should be balanced the excess of wages for the latter part of the time. Up to the date of the trial he had received in wages, therefore, only $275 less than he would have received if he had remained in defendant's employ, and the learned trial justice erred in charging the jury that the damages amount to $875.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.